UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

RINA UBALDE,

                             Plaintiff,

                    v.

MAIMONIDES MEDICAL CENTER, KATHYANN
MCLEAN, DOROTHY JEAN GRAHAM HANNAH
(DECEASED), SONYA MIKHAILOVA, PAUL
STUART, DIMITRY LIVSHITS, APHENE
FRASIER, LOCAL 1199 SEIU, UNITED
HEALTHCARE WORKERS EAST, DOREEN
FARWARD, CARMELA MARASIGAN, RIVKA
MINTZ, DAWN WHYTE, JANE DOE, and JOHN
DOE,

                            Defendants.

**MEMORANDUM & ORDER**
23-CV-3948 (MKB)

------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

       Plaintiff Rina Ubalde commenced the above-captioned action on April 10, 2023, against

Defendants Maimonides Medical Center ("Maimonides"), Kathyann McLean, Sonya

Mikhailova, Paul Stuart, Dimitry Livshits, Aphene Frasier, Carmela Marasigan, Rivka Mintz,

and Dawn Whyte (together the "Maimonides Defendants"), Local 1199 SEIU ("1199SEIU"),

United Healthcare Workers East, and Doreen Farward, (the "Union Defendants"), and Dorothy

Jean Graham Hannah, Jane Doe, and John Doe (together the "Additional Defendants"), in the

Supreme Court of King's County ("State Court"), alleging harassment, tortious interference with

an employment relationship, intentional infliction of emotional distress ("IIED"), and negligent

supervision arising out of Plaintiff's employment at Maimonides.  (Compl., annexed to Notice of

Removal as Ex. 1, Docket Entry No. 1-1.)  On May 26, 2023, Defendants filed a Notice of

Removal pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), removing the action to the Eastern

District of New York and asserting that the Court has original jurisdiction pursuant to 28 U.S.C.

§ 1331 based on their assertion that Plaintiff's claims against the Union Defendants are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* ("NLRA").  (Notice of Removal, Docket Entry No. 1.)

On November 9, 2023, the Maimonides Defendants moved to dismiss the Complaint, and on November 10, 2023, the Union Defendants also moved to dismiss the Complaint.[1]  On November 10, 2023 Plaintiff filed her opposition to both motions to dismiss, in the alternative seeking leave to amend the Complaint.[2]  For the reasons explained below, the Court dismisses the claims against the Union Defendants as time-barred, and declines to exercise supplemental jurisdiction over Plaintiffs' claims against the Maimonides Defendants for harassment, tortious interference with an employment relationship, IIED, and negligent supervision.

## I.   Background

Plaintiff is an information specialist at Maimonides Hospital and of Filipino national origin.  (Compl. ¶¶ 2, 7.)  Plaintiff worked in the hospital's float pool, a group of employees willing to work in a different unit each day, from April of 2016 to July of 2017, and the New Building Two ("NB2") facility from July of 2017 to present.[3]  (*Id.* ¶¶ 7–8, 11.)  She is also a member of the 1199SEIU Union.  (*Id.* ¶ 19.)

---

[1]  (Maimonides Defs.' Mot. to Dismiss ("Maimonides Defs.' Mot."), Docket Entry No. 19; Maimonides Defs.' Mem. in Supp. of Maimonides Defs.' Mot. ("Maimonides Defs.' Mem."), Docket Entry No. 19-5; Maimonides Defs.' Reply Mem. in Supp. of Maimonides Defs.' Mot., Docket Entry No. 20; Union Defs.' Mot. to Dismiss ("Union Defs.' Mot."), Docket Entry No. 24; Union Defs.' Mem. in Supp. of Union Defs.' Mot. ("Union Defs.' Mem."), Docket Entry No. 25; Union Defs.' Reply Mem. in Supp. of Union Defs.' Mot. ("Union Defs.' Reply"), Docket Entry No. 26.)

[2]  (Pl.'s Opp'n Mem. ("Pl.'s Opp'n"), Docket Entry No. 22.)

[3]  The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Defendants' motions.

### a.   Allegations against the Maimonides Defendants

Plaintiff alleges that the Maimonides Defendants engaged in several instances of discriminatory conduct.  First, during her time working in the float pool she was humiliated and harassed multiple times by supervisors.  (Compl. ¶¶ 14, 16, 18.)  Second, Hannah and McLean both openly blamed Plaintiff when co-workers deleted patients in the hospital's tracking system, which "damage[ed] her reputation and humiliate[ed]" her.  (*Id.* ¶ 17.)  Third, Hannah "yelled at and humiliated [Plaintiff] on a constant basis, in public and over the phone and made fun of how [Plaintiff] walks."  (*Id.* ¶ 18.)  Fourth, in October of 2016, McLean made her sign a "contract" stating that Plaintiff could not complain anymore and would stop sending letters concerning patient safety, and Stuart, another Maimonides employee, "observed the public humiliation inflicted by" Hannah inside McLean's office but did nothing.  (*Id.* ¶¶ 29–30.)  Fifth, in December of 2016 McLean accused Plaintiff of being "rude, disrespectful, and insubordinate" and yelled at Plaintiff over the phone and in front of other staffing clerks, and during one phone call McLean demanded that Plaintiff bring an 1199SEIU delegate with her to work the following day or she would not be allowed to work.  (*Id.* ¶¶ 20, 25.)  Sixth, McLean repeatedly refused Plaintiff's request for personal leave in October of 2018 to visit her terminally ill aunt in Nevada, and Plaintiff's inability to visit her aunt resulted in her family refusing to communicate with her after her aunt's death.  (*Id.* ¶¶ 37–42.)  Seventh, McLean knew that in Filipino culture, "if a dying person is requesting to see you, you must come if physically able" but still refused to allow her time off to see her aunt.  (*Id.* ¶ 38.)

Plaintiff also alleges that other supervisors at Maimonides participated in the harassment. (*Id.* ¶¶ 32, 35–36.)  Livshits, another supervisor at Maimonides, refused to respond to her letter complaining about patients being deleted in the hospital system, and also "knowingly

3

participated in the harassment." (*Id.* ¶ 32.) During a training, Frasier "humiliated and intimidated" Plaintiff and stopped her from asking questions to the instructor. (*Id.* ¶¶ 35–36.)

Plaintiff began working in NB2 as an information specialist in July of 2017, and alleges the harassment continued there. (*Id.* ¶¶ 44, 46.) In late 2017, Plaintiff experienced "bullying, yelling, harassment and intimidation" from Whyte, a nurse at Maimonides. (*Id.* ¶ 46.) In March of 2021, Whyte became "visibly angry and started harassing" Plaintiff when she notified Whyte that she would be receiving a patient admission. (*Id.* ¶¶ 51–52.) On March 22, 23, and 29, 2021, "there were a series of harassing exchanges of cell phone texts" between Mintz and Plaintiff during work hours. (*Id.* ¶ 58.)

Plaintiff complained to her supervisors, but they refused to intervene. In 2018, Plaintiff "complained verbally many times to" Marasigan, the NB2 Nurse Manager, that Whyte had been harassing Plaintiff, and in response Marasigan "always laughed and ignored" Plaintiff's allegations against Whyte, due to Marasigan's friendship with Whyte. (*Id.* ¶¶ 47–48.) In March of 2021, Marasigan spoke to Plaintiff in Tagalog, a Filipino dialect, so that other staff would not understand what she was saying. (*Id.* ¶ 53.) On March 29, 2021, Plaintiff filed three formal complaints with the Maimonides Compliance Department against Whyte, Marasigan, and Mintz, but never received a response from anyone associated with Maimonides Hospital. (*Id.* ¶¶ 59–60.)

In May and June of 2021,[4] Plaintiff sent letters to Marasigan stating she had not been paid for a total of thirty hours of leave she had taken under the Family and Medical Leave Act ("FMLA"), and Plaintiff alleges that in retaliation, Marasigan at first did not respond and later

---

[4] The Complaint alleges that the first letter was sent in May of 2022, (Compl. ¶ 61), but alleges that the surrounding events took place in May and June of 2021, (*id.* ¶¶ 63–65). Given this context, the Court assumes the first letter was sent in May of 2021 for the purposes of this Memorandum & Order.

informed Plaintiff "I can't help you" and gave Plaintiff instead a written instruction on how to contact an insurer.[5]  (*Id.* ¶¶ 61–69.)

Plaintiff is still employed by Maimonides and the harassment and bullying is ongoing. (*Id.* ¶¶ 49, 81.)  The harassment has caused Plaintiff health issues, including chest pain and "severe exacerbation of her anxiety attacks."  (*Id.* ¶¶ 21–24, 56.)

### b.   Allegations against the Union Defendants

Plaintiff alleges that despite her membership in 1199SEIU, she has not received any assistance from 1199SEIU.  (Compl. ¶¶ 82, 110.)  She notified Farward, her 1199SEIU representative, of the treatment she was subjected to at Maimonides, and Farward "observed the bullying firsthand" inside McLean's office, but Farward "did nothing to stop the public discrimination and intimidation that occurred" in October and December of 2016.  (*Id.* ¶¶ 33–34.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting

---

[5]  Plaintiff does not make clear whether the insurer was her own insurer or Maimonides'. (*See* Compl. ¶ 66.)

*Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reins. Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (quoting *Iqbal*, 556 U.S. at 678).

> **b.   Plaintiff's claims against the Union Defendants**

For the reasons explained below, Plaintiff's claims against the Union Defendants are preempted by the LMRA and are also time-barred.

> **i.   Plaintiff's claims against the Union Defendants are preempted by the LMRA**

Union Defendants argue that Plaintiff's claims against them are preempted by federal law, and must be decided under the LMRA, 29 U.S.C. § 185, and the NLRA, 29 U.S.C. § 151. (Union Defs.' Mem. 1.)  Union Defendants contend that the LMRA "completely preempts any state law claim that requires interpretation of, or is inextricably intertwined with, a collective bargaining agreement," and therefore preempts Plaintiff's claims.  (*Id.* at 3.)  In addition, Union Defendants argue that the NLRA establishes that labor organizations owe the employees they represent a duty of fair representation in enforcing collective bargaining agreements, and preempt state law claims where the state law claims concern obligations that are already imposed on a union by the duty of fair representation.  (*Id.* at 4.)  Thus, Union Defendants argue, because the state common laws cited by Plaintiff impose no duties that the Union Defendants do not already owe under the duty of fair representation, they are preempted by the NLRA.  (*Id.* at 5.)

Plaintiff concedes that her claims against the Union Defendants are preempted by the LMRA and the NLRA.  (Pl.'s Opp'n 9–13.)

Although the parties agree that Plaintiff's claims against Union Defendants are preempted by the LMRA and the NLRA, "[b]ecause complete preemption may be crucial to the existence of federal subject-matter jurisdiction, [the Court] cannot rely on the parties' assumptions about complete preemption," as the Court "ha[s] an independent obligation to ensure that federal subject-matter jurisdiction exists." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 274 (2d Cir. 2005) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). Therefore, because the Complaint alleges only state-law claims, the Court must determine whether Plaintiff's claims as to the Union Defendants are completely preempted.

"[W]hen a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by section 301 [of the LMRA] and must instead be resolved by reference to federal law." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). "[F]ederal preemption is a defense to the plaintiff's suit and does not appear on the face of the complaint, [and therefore] a defendant generally may not remove an action on the basis of federal preemption." *Domnister v. Exclusive Ambulette, Inc.*, 607 F.3d 84, 88 (2d Cir. 2010) (citations omitted); *see also Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 206 (2d Cir. 2019) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987))). "However, the Supreme Court has recognized a limited exception to this rule when Congress has so completely preempted an area of law that any civil complaint is necessarily federal in character." *Domnister*, 607 F.3d at 88 (citing *Franklin H. Williams Ins. Trust v. Travelers Ins. Co.*, 50 F.3d 144, 147 (2d Cir. 1995)); *see also Whitehurst*, 928 F.3d at 206 ("The complete preemption doctrine is an exception to the well-pleaded complaint rule."

7

(citing *Caterpillar*, 482 U.S. at 393)). Section 301 of the LMRA is one of those statutes that has been found to completely preempt all state law claims. *See Whitehurst*, 928 F.3d at 206 ("The Supreme Court has identified only three statutes as having the requisite 'preemptive force' to support complete preemption, one of which is § 301 of the LMRA." (quoting *Sullivan*, 424 F.3d at 272)); *Sullivan*, 424 F.3d at 272 (noting that the Supreme Court has found § 301 of the LMRA to be one of "only . . . three statutes to have the requisite extraordinary preemptive force to support complete preemption" (citations omitted)); *Martinez v. Staten Island Univ. Hospital*, No. 19-CV-2672, 2020 WL 13837813, at *8 (E.D.N.Y. June 19, 2020) ("The Supreme Court has identified only three statutes as having the requisite 'preemptive force' to support complete preemption, one of which is § 301 of the LMRA." (quoting *Whitehurst*, 928 F.3d at 206)).

Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a); *see also Vera*, 335 F.3d at 114 (same). Section 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement," and therefore "when resolution of a state law claim is 'substantially dependent' upon or 'inextricably intertwined' with analysis of the terms of a [collective-bargaining agreement], the state law claim 'must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law.'" *Whitehurst*, 928 F.3d at 206 (first quoting *Caterpillar*, 482 U.S. at 394; and then quoting *Allis-Chalmers*, 471 U.S. at 213, 220); *see also Martinez*, 2020 WL 13837813, at *8 (same). When a plaintiff covered by a collective-bargaining agreement asserts "legal rights independent of that agreement," however, "preemption does not occur."

*Whitehurst*, 928 F.3d at 207 (emphasis omitted) (quoting *Caterpillar*, 482 U.S. at 396).  "A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.'"  *Id.* (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

Plaintiff's claims against the Union Defendants are completely preempted by section 301 of the LMRA.  Plaintiff asserts that 1199SEIU "has failed to represent [her] as a member of the Union and the applicable bargaining unit," (Compl. ¶ 110), and that Union Defendants are guilty of negligent supervision where they were "derelict in their supervisory responsibilities of workplace standards," (*id.* ¶ 104).  Plaintiff's claims against the Union Defendants therefore are "inextricably intertwined" with the collective-bargaining agreement with 1199SEIU because the Union Defendants' alleged failure to properly represent her and enforce workplace standards arose out of her status as "a member of" 1199SEIU.  (*Id.* ¶ 19); *see, e.g.*, *Cestaro v. Prohaska*, 669 F. Supp. 3d 276, 281 (S.D.N.Y. 2023) (concluding that claims were preempted by the LMRA where they "all involve[d] alleged violations of duties assertedly created by the [Union agreement] — and their resolution therefore require[d] interpreting that [agreement]").[6]

---

[6]  Union Defendants also argue, and Plaintiff concedes, that Plaintiff's "state law . . . and common law claims" are preempted by and "properly analyzed under" the NLRA.  (Union Defs.' Mem. 4–5; Pl.'s Opp'n 9–10.)  "The NLRA contains no express pre-emption provision," but the Supreme Court has articulated "two distinct NLRA pre-emption principles," *Garmon* preemption and *Machinists* preemption.  *Building and Constr. Trades Council of Metropolitan Dist. v. Assoc. Builders & Contractors of Mass./R.I. Inc.*, 507 U.S. 218, 224 (1993).  *Garmon* preemption "forbids state and local regulation of activities that are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8."  *Id.* (alteration in original) (citation omitted).  *Machinists* preemption, on the other hand, "prohibits state and municipal regulation of areas that have been left to be controlled by the free play of economic forces."  *Id.* (citation omitted).  The parties have not stated which type of preemption they believe applies here, or which particular state common law claims they believe are preempted by the NLRA.  However, the Court need not make this determination since Union Defendants move to dismiss the Complaint based on their assertion that it was filed outside of the six-month statute of limitations applied by both the LMRA and the NLRA, and not on a theory that Plaintiff has otherwise failed to state a claim under the NLRA.  (*See* Union Defs.' Mem. 5–6); *see also Scerba v. Allied Pilots Ass'n*, 589 F.

### ii.    Plaintiff's claims against the Union Defendants are time-barred

Union Defendants argue that both LMRA claims and duty of fair representation claims

under the NLRA are time-barred because they are governed by a six-month statute of limitations,

and claims must be filed within six months of when a plaintiff "knew or reasonably should have

known the alleged breach had occurred."  (Union Defs.' Mem. 5 (quoting *Scerba v. Allied Pilots*

*Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014)).)  Union Defendants argue that because the

Complaint was filed on April 10, 2023, and the alleged conduct took place from 2016 through

2021, Plaintiff's claims are untimely.  (*Id.* at 5–6.)

Plaintiff argues that the Union's misconduct did not end in 2021, but "continued up to

and including" the date of the filing of the Complaint, and therefore her claims are timely.  (*Id.* at

13.)

"A duty of fair representation claim has a six-months' limitations period, and a 'cause of

action accrues no later than the time when plaintiffs knew or reasonably should have known that

such a breach of the duty of fair representation had occurred, even if some possibility of

nonjudicial enforcement remained.'"  *Scerba*, 589 F. App'x at 556 (quoting *Cohen v. Flushing*

*Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)); *McLeod v. Verizon N.Y., Inc.,* 995 F. Supp.

---

App'x 554, 556 (2d Cir. 2014) (noting that a duty of fair representation claim under the NLRA
"has a six-months' limitations period, and a 'cause of action accrues no later than the time when
plaintiffs knew or reasonably should have known that such a breach of the duty of fair
representation had occurred, even if some possibility of nonjudicial enforcement remained'"
(quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995))); *Campbell v.
Kane, Kessler, P.C.*, 144 F. App'x 127, 131 (2d Cir. 2005) (noting that the statute of limitations
for hybrid section 301/duty of fair representation claims is six months, and it "begins to run
when the employee knew or should have known of the breach of the duty of fair representation"
(quoting *White v. White Rose Food*, 128 F.3d 110, 114 (2d Cir. 1997))).  Therefore, to the extent
the six-month statute of limitations may bar Plaintiff's claims under the LMRA, it equally bars
any claims under the NLRA, regardless of the theory of preemption.  Moreover, to the extent any
of Plaintiffs' claims are not preempted by the NLRA and therefore not time-barred by the six-
month statute of limitations, for the reasons explained below, the Court declines to exercise
supplemental jurisdiction over those claims.

2d 134, 142 (E.D.N.Y. 2014) ("The six-month clock begins to run from the time when the union

member knew or reasonably should have known that a breach of the duty of fair representation

had occurred." (citation and internal quotation marks omitted)).  Hybrid claims, which are claims

against an employer and a union, are also subject to a six-month statute of limitations.  *See*

*Peralta v. 32BJ SEIU*, No. 21-1638, 2022 WL 792164, at *1 (2d Cir. Mar. 16, 2022) (citing

*Kalyanaram v. Am. Ass'n of Univ. Professors at the N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d

Cir. 2014)); *McLeod*, 995 F. Supp. 2d at 142 ("[T]he appropriate statute of limitations for

'hybrid' actions, i.e., cases involving both claims against the employer under [s]ection 301 and

claims against the union for breach of the duty of fair representation, is six months." (first

alteration in original) (citation omitted)); *see also Martinez v. Caravan Transp., Inc.*, 253 F.

Supp. 2d 403, 408 (E.D.N.Y. 2003) ("The federal six month statute of limitations governs hybrid

[s]ection 301 claims.").

   "Once a plaintiff learns of his union's breach of its duty of fair representation, the union's

subsequent failure to actually represent the plaintiff[] 'cannot be treated as a continuing violation

that preclude[s] the running of the limitations period.'"  *Buttry v. Gen. Signal Corp.*, 68 F.3d

1488, 1492 (2d Cir. 1995) (second alteration in original) (quoting *Flanigan v. Int'l Bhd. of*

*Teamsters, Truck Drivers Local 671*, 942 F.2d 824, 827 (2d Cir. 1991)); *Ayala v. U.S. Postal*

*Serv.*, 727 F. App'x 15, 17–18 (2d Cir. 2018) (same); *Connor v. Elmhurst Dairy, Inc.*, 2016 WL

126373, at *2 (E.D.N.Y. Jan. 11, 2016) ("[S]ix-month statute of limitations for unfair

representation claims . . . begins to run once the employee learns of the union's breach, and any

subsequent failure by the union to represent the employee is not treated as a continuing violation

relating back to the original breach."); *Rosario v. Local 1106 Transp. Works of Am.*, 29 F. Supp.

3d 153, 159–60 (E.D.N.Y. Jan. 27, 2014) (same).

Plaintiff alleges that she first informed 1199SEIU and Farward about the alleged harassment in late 2016, and that Farward "observed the bullying firsthand . . . yet did nothing to stop the public discrimination and intimidation that occurred on or about October 20, 2016, and December 1, 2016." (Compl. ¶¶ 33–34.) The latest date on which Plaintiff first became aware of the Union's alleged breach of its duty of fair representation was therefore October 20, 2016. (*See id.* ¶ 34.) Plaintiff asserts she brought this claim on April 10, 2023.[7] (Pl.'s Opp'n 13.) Plaintiff therefore brought the claim long after the six-month statute of limitations period had passed, and her allegations that the Union Defendants subsequently continued to violate their duty of fair representation cannot be treated as a continuing violation.

Plaintiff does not indicate that she is seeking leave to amend her Complaint with any additional claims against the Union Defendants; rather, she asserts only that her claims are timely because "[t]he allegations against the Union [Defendants] continued up to and including" the filing of the Complaint. (Pl.'s Opp'n 13.) Because the continuing violation doctrine does not apply to duty of fair representation claims, any leave to amend these claims would be futile. *See, e.g., Sullivan v. Gelb*, No. 23-CV-5194, --- F. Supp. 3d ---, 2024 WL 2702106, at *19 (S.D.N.Y. May 23, 2024) (dismissing the plaintiff's LMRA claim as untimely with prejudice after concluding it was not equitably tolled and noting that "[w]here . . . a plaintiff alleging a hybrid LMRA § 301 claim has not set forth any viable equitable reason for tolling a statute of limitations, courts in this circuit have dismissed such claims for untimeliness" (quoting *Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 339 (E.D.N.Y. 2012))); *Rosario*, 29 F. Supp. 3d at

---

[7] Plaintiff also asserts that she first filed a summons with notice in State Court on December 12, 2019. (Pl.'s Opp'n 9.) Union Defendants assert that there is no evidence that a summons with notice was filed on December 12, 2019. (Union Defs.' Reply 1.) However, even if Plaintiff filed a summons with notice on December 12, 2019, Plaintiff would still have been outside the six-month statute of limitations period since Plaintiff first became aware of the Union's alleged breach of its duty of fair representation on October 20, 2016.

159–60 (dismissing with prejudice the plaintiff's LMRA claim, concluding that because the claim was time-barred and the continuing violation doctrine did not apply, any attempt to cure the claim would be futile).

The Court therefore dismisses Plaintiff's claims against the Union Defendants and denies Plaintiff leave to amend.

### c.   Remaining state law claims

Maimonides Defendants argue that the Court should dismiss the Complaint because Plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) for her claims of (1) harassment, (2) tortious interference with an employment relationship, (3) IIED, and (4) negligent supervision.  (Maimonides Defs.' Mem. 4.)

Plaintiff argues that the Court should deny Defendants' motions to dismiss because she has sufficiently alleged all four claims.  (Pl.'s Opp'n 6.)

Because the Court dismisses the federally preempted claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims of harassment, tortious interference with an employment relationship, IIED, and negligent supervision.  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003)); *see also Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (same); *One Commc'ns Corp. v. JP Morgan*

*SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims[.]" (citing *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009))).  Accordingly, the Court dismisses Plaintiff's state law claims without prejudice.

### III. Conclusion

For the reasons stated above, the Court dismisses the claims against the Union Defendants as time-barred.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against the Maimonides Defendants for harassment, tortious interference with an employment relationship, IIED, and negligent supervision and dismisses these claims without prejudice.

Dated: July 26, 2024
          Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge